2017-1737. We're here on an employment case that was based on a non-final decision from the MSPB. The board was unable to come to a full 3-3 decision, so the initial decision from the AJ became the final decision. Now, typically it's going to be pretty similar to the analysis that we would have if it was a final decision or an initial decision. But here, in between the initial decision and the final decision, a case called Forte v. D. came out, and I would say that it was probably 99% similar to the case that we have here. However, it was never analyzed because the initial decision became the final decision. But, counsel, this was all facts that you argued, 40 pages of facts about the handling of the sample, and we give deference to the administrative judge, so we're not hearing witnesses? Your Honor, it's about whether or not they took and gave the sufficient evidence to array weight to the mitigating factors under Forte, such as the hair follicle test, which they, in the agency's reply brief, they said didn't matter. It's not true under Forte. It does matter. They can give it weight. There's a negative drug test the day after. There's the blood test a week later. There's the polygraph that was given no deference because— But they're all part of how you rebut a positive drug test finding. So the real question that is in front of the court today is, is there any way to possibly rebut a positive drug test, and if so, how much does it take? And here, just like in Forte, we've given every single solitary way that he could possibly show, other than going back in time and taking the drug test sample. We still don't know what happened to it because Malone, who was the collector, doesn't recall what happened. So true, there is no smoking gun here in terms of somebody saw him switch the samples out. That doesn't exist. But other than that, beyond that, is that what it takes to prove that a drug test shouldn't have been positive? Is that what it takes to prove there has to be someone watching the collector on camera to show that he switched the sample out? We have no idea what happened because the collector did not recall, and the sample was never given to us because the agency lost it. Well, there were some conflicts in the testimony, and the AHA did make a finding, for example, on the question of whether Mr. Grimsrud was observed giving the sample. Mr. Grimsrud, as I recall, said he wasn't observed, whereas Mr. Malone said he did observe him. Mr. Malone testified that he didn't recall, but he had in the past always done it. That was the difference, and that was what sometimes we try to distinguish in our brief was between what constitutes substantial evidence versus not. Let me ask you one question, Counselor. The main focus of your brief is on the challenge to the collection of the sample. That's the main focus. I would say the main focus is the fact that they didn't analyze it under Forte because we gave them plenty of evidence. That's the sample. That's the whole sample issue. The question is, let's assume for the example, and this is just hypothetically, let's assume one were to conclude that the decision of the board, which is what we have in this case, with respect to the collection of the sample and so forth is all in order. We reject all of your arguments except we were to conclude that there was a problem with the issue of whether the deciding official, Mr. Golden, knew he could mitigate the penalty. What would be the remedy there? Well, Your Honor, I think what we would have to do is allow the petitioner to come back to his job and get him on a last chance agreement, which he was given technically in an NOPR. Why would that be? Wouldn't it just be that you would have to decide? The question would be, okay, everything else would stand in the case except one would be saying Mr. Golden didn't realize he could mitigate the penalty. So wouldn't the result at that point be to send it back to the agency for a determination on that issue? In other words, to the deciding official. Isn't that logically what you would do? Right. Exactly. That's exactly true. And that would go back to the NOPR. I'm sorry, who? The Notice of Proposed Removal. Because the Notice of Proposed Removal had a quote-unquote last chance agreement in it, but it wasn't fully explained, it wasn't there properly, and the reason that my client did not accept that or understand what was going on was because it hadn't been proven yet. But you hardly argued the point that Judge Schall is making. You didn't get to it until page 41, and you devoted one page to it, and that's pretty close to a waiver of that argument, isn't it? In terms of the last chance agreement, Your Honor? The question, whether the decider knew he could mitigate the penalty. Well, it's not such... It didn't seem to be an issue that you were significantly raising. It is a significant issue, and it goes directly to Judge Schall's point, which is, what happens if you guys say that it was all good, it goes back down to the deciding official. We're not you guys. Yes, sir. We're the United States Court. Yes, sir. My apologies. No, my question was this, Mr. Seville, if we were to decide that everything was fine in this case, except the fact that the deciding official, Mr. Golden, who was also the proposing official, didn't realize, and this is based on that colloquy that's quoted from the deposition, he didn't know he could mitigate the penalty. Correct. Okay? Now, that's separate from this last chance agreement. I mean, Mr. Grimsrud chose not to pursue that, so wouldn't the only question be, we send it back to Mr. Golden and say, all right, do you want to mitigate, decide whether you're going to mitigate? Correct. The fact that I was, what I was getting to, Your Honor, was that instead of getting it to that point, I was thinking perhaps we could get to, would they offer him an actual last chance agreement now that the court has proven or disproven the actual underlying facts? The reason why he didn't accept that in the beginning, which is a mitigation we know under the MSPB, if he would have accepted it at the time, all of this would have been forgotten. But that's kind of water over the dam now. But if you're sending it back, isn't the water over the dam the exact same situation? Well, no, the only thing that would change is, the only thing that we would be redoing is Mr. Golden, if he is still in the agency, deciding whether or not he wants to mitigate the penalty of removal. He's in the situation where Mr. Grimsrud said, I don't want to go through the last chance process and Mr. Golden would then have to decide, okay, I now have to decide if I want to mitigate. Would that be the logical situation? As long as we could have a last chance agreement on the table in terms of the removal, final removal itself, which it wasn't. It was only in the notice of proposed removal from him. It wasn't in the final document. So in between that interim time, the petitioner did his reply and his oral examination, and then there was not a last chance agreement included in the final. Well, maybe Mr. Golden would decide I'm going to give him a last chance agreement, or maybe he wouldn't. But the point is, isn't that the only thing that would be up for decision, namely, is there going to be mitigation? There might not be mitigation, or there might be some kind of mitigation, or there might be a last chance agreement. Correct, Your Honor. If you decide in terms of finding that all the testing procedures were followed properly, yes, that is correct. OK. And I'll save my remaining time for rebuttal if there's no further questions. We will save it for you. Ms. Kershaw. Good morning. Will you please, the court, the result in this case is controlled by this court's decision in Frank versus the Department of Transportation, where the court held that a urine specimen's of custody must be strong enough so that on the record as a whole, it is supported by substantial evidence. Mr. Grimsrod has raised the Forte case, which was decided by the board. And in that case, the administrative judge found that there was not substantial evidence to support the agency's charge. The Forte case is— The board relied on the hair follicle test there. Yes, that's correct. Whereas it did not rely on the—or it basically ignored the hair follicle test here. The records in the two cases are enormously different. In the Forte case, there was supporting— Is my statement right? Yes, but I want to clarify it. In the Forte case, there was supporting expert testimony of the hair follicle test to show that it had some relevance to the earlier urine specimen that was collected and tested positive. The issue in both cases is the urine specimen that is collected, and is that a proper positive result? In the Forte case, there's a hair follicle test taken approximately 30 days later, and there's a supporting expert testimony that it has relevance to the earlier urine specimen, which is then tested for drugs. In this case, in contrast, all that was done is that the piece of paper with the hair follicle test was part of the record before the board. There is no supporting testimony that that hair follicle test has any relevance to the urine specimen, which in this case, there's approximately a 60-day span between the urine being collected on March 30th and then the hair follicle test. And no supporting testimony that the hair follicle test has any relevance to whether this evidence, this urine specimen, was properly a positive, that it was a true positive. So the distinction is one case, there was some medical examiner that said that the hair was a positive, and in this case, there was no such testimony. And so that's enough? No. There's enormous differences between the two cases. If you read the decision in the Forte case, in the Forte case, the administrative judge is not crediting the testimony of the collector, and the board points this out, that there's an implicit credibility finding in Forte against the collector and in favor of Mr. Forte. So that's another distinction between the two records. And each case really has to be judged on the record that comes to the board. In this case, there is ample evidence in the record that shows that the chain of custody was intact. I could just go through that real briefly here. Well, you don't have to go through the whole thing, but what about the curiosity of the time entries for the collection of the sample, where Mr. Grimsrud's copy doesn't have that time entered on his copy, but the time entry is filled out in all the other copies? That's correct. It was explained, this is explained through the testimony of all the witnesses, that there's a form which has basically five sheets that are together. Right, so why isn't the logical conclusion that after Mr. Grimsrud left, Mr. Malone went into the bag, opened up the bag, pulled out the copy that he put in the bag, he took it out, and started filling out that time entry along with the other copies for the time entry? The administrative judge in this case made alternative findings on that point. The evidence showed that at the time, the time is written on these custody and control forms. At that time, a lot of things are happening. At the same time, Mr. Grimsrud is filling out his form, and that it may be possible that he doesn't see the collector write on his copy the 615. It's quite possible because of what's going on that he doesn't see the collector write it on the form. The forms have been separated. To make it clear, there's five forms. The one on the bottom is the donor form. The one on the top is the test facility copy. That one is the one that is separated. The test facility copy is separated. The whole package goes to Mr. Grimsrud, who then proceeds to fill out. He signs his name on copy two. When he's doing that, it's quite possible he doesn't see the collector write on the Alternatively, it could have been, the judge found, it could have been, as Your Honor has just stated, that Mr. Malone, the collector, went into the bag and, after he had already placed the form in the bag, took out the form and then wrote on it 615. But what's pointed out is at that stage of the process, the urine specimen is absolutely secure. Through the whole process of the chain of custody, the specimen is poured into these vials, which are capped, and then they are sealed with a tamper-evident tape that goes over the cover of the vial. And on that tape is a unique identification number. That unique identification number is also on the custody and control form. And once that tape goes over the vial, it's absolutely secure. There's uniform expert testimony in the record here and findings by the judge that this tape is tamper-evident and that it had never been tampered with. That tape, is that where Mr. Grimsrud puts his initials on? Yes. He puts his initials on it and it has the unique number. It doesn't have his name, just his initials, and then it is dated by the collector. In this case, the testimony was that it had his initials, it is properly dated, and this is the testimony from the laboratory who receives it, who checks the vials when they arrive at the laboratory, that there has been no tampering with the vial. So, all this happens before the mix-up with not getting the 615 on all of the copies of the custody and control form. Ms. Kirshner, what about the issue of whether Mr. Golden knew that he could mitigate the penalty? Yes. On that question, Mr. Golden testified before the administrative judge that he did have discretion, and then he was cross-examined and showed his deposition testimony, which could be read to indicate that he didn't think he really had discretion, that he had to go ahead. That would probably be the plain language reading of the deposition, right? Well, I think you could read it either way. He's saying that he thinks it's the Secretary's decision, but what he was saying also in his deposition is he didn't know whether the question referred to the proposal or to the final decision. And for the proposal... But getting to the point of what did Mr. Golden believe were his options for discipline, I mean, does the government... What were the options at that point, aside from removal? At the time of the proposal, just so I make sure I understand your question as to the timing, at the time of the proposal, he considers the table of penalties, he considers all of the evidence that comes to him, and based on everything that he had in front of him, including all of the guidelines and the evidence... What does the table of penalties say for a positive drug test? That for someone in a position like him, which is a safety-related position, that normally it is removal. It just says removal. Yes, but then also you can offer, as was done in this case, you can offer the possibility of a rehabilitation plan. But that is the employee's choice, and that is exactly what Mr. Golden did at the time of the proposal. Is there anything like suspension or anything like that? No, not for someone in his position. Now, it also says in the table of penalties that you do have discretion. So, perhaps, depending upon the evidence, there might be another case. If someone was... If someone... If there was evidence that... I know it's hard to imagine, but if somebody was somehow drugged and they took or ingested something that had the cocaine in it and they ended up getting it that way, if that were the facts of the case, that's clearly a different case. Well, then there would be no discipline, right? Excuse me? Then there would be no discipline, if that's what the evidence revealed. Right. In fact, there is a board case to that effect. It's the... I'm not sure if it's cited in any brief, but it's the McNeil case where an employee, his cigar was tampered with by his wife. Right. So, I mean, I'm trying to articulate what kind of mitigation is actually an option that would be considered by a deciding official for a positive drug test. Other than the person being drugged, it sounds like maybe there isn't one? Other than... It depends on the... Again, it depends on the nature of the job here. This is a safety-related position. So, for this type of position, in the normal case, someone would be proposed for removal and offered the alternative of a rehabilitation plan. And that is exactly what Mr. Golden did in this case. Now, then he also testified as to his decision-making on the final decision, the decision as to what finally should be done. And he testified that he considered the response that was tendered by Mr. Grimsrod, all of the evidence that Mr. Grimsrod provided, including the other testing. And he considered all of that, but then concluded, based on the safety nature of the position and the fact that they had offered the rehabilitation plan, but it had not been accepted, that he should be removed. Ms. Cushing, let me ask you, so you're saying at the time he was wearing his deciding official's hat, you're saying the record reflects, granted what we have in the deposition testimony, but the record reflects that he knew he had discretion? Yes. And what do you point to to support that? He testified that he knew he had discretion. This is at 1125. He said, I recall the testimony, referring to the deposition testimony, and quite frankly I recall being confused at that point. Subsequent to that, I had been preparing for this, making sure I do the right thing. And there was one at the times that I looked into, and there is discretion. So is that what you're pointing to? He also testified earlier on direct examination that he had discretion, and he went in that he had reviewed the package. And did he know it at the time? I mean, the key is, did he know at the time that he was deciding on the penalty that he had discretion? Okay. I just want to see whether I can. I mean, certainly the record reflects that at the time of the hearing before the AJ, he recognized that he had discretion. He said, I did have discretion. That's on page 1124. And then earlier in direct testimony, he said also that he had discretion. But he also went through. Was he saying he knew he had discretion at the time? That's the key thing. Yes, I understand. The administrative judge heard the testimony. Also on direct, he testified that he had discretion. But he also testified as to how he went through the response. Let me ask you one thing. If for the moment, I just want to pick up on the question I asked Mr. Silverfield, if for the moment one were to say, okay, everything stands in this case except for one thing, the deciding official didn't know he had the right to exercise discretion, what would be the proper result in that situation? We affirm everything else, but you have a problem with that. Then, I mean, one alternative then is for the court to remand it to the board, who then remands it to the agency. And then the deciding official, if Mr. Golden isn't there, then it's somebody else who would be the deciding official. And they would go through the whole process again. And would sit there and just, well, the only thing, not the whole process, the only thing would be deciding on the penalty. Whether the deciding official, whether it's Mr. Golden or someone else, would then sit there and say, okay, am I going to mitigate, right? Right, right. But, again, here the administrative judge heard the testimony of Mr. All-Golden face-to-face and did credit his testimony when he indicated that he had discretion and also that he went through the entire response from Mr. Goldman, excuse me, from Mr. Grimshaw. He went through the entire response that he had submitted and addressed every point in that response. One final, just very quick question. Was this issue raised before the AHA and was it raised in the petition for rehearing, this mitigation question? Because we don't have those documents in the appendix. I was just wondering if this was an issue before the AHA. There's this testimony we have, but was it argued? And was it argued on the petition for review? I can't say whether it was argued on the petition for review because I don't recall. But we do have that. We can supply it to the court. I do think there's precedent, though, that they do not necessarily need to raise it in the petition for review if they've raised it at the hearing itself. So I wouldn't be arguing that the failure to raise it to the board concludes the argument now. I didn't make it in our brief. I wouldn't make it now. No, that's fair enough. I just wanted to find out what you knew. OK. Thank you, Ms. Kirshner. Thank you. Mr. Silverfield has a few minutes of rebuttal time if you need it. May I please report just a brief rebuttal, specifically to Judge Schall's point? The agency states in their reply brief on page 54 that the reason that the penalty was mitigated, in their view, was Mr. Golden's initial offer of an FAA-approved and monitored treatment and rehabilitation plan demonstrated that he had distraction. Now, the DOT orders in the case law on that from both the Federal Circuit and the MSPB makes it in the final decision of removal for the offering of the last chance agreement, the FAA-approved TRP, not in the notice of proposed removal. So it's a little bit disingenuous to say that he had discretion because he offered it in his proposed removal rather than in his removal decision itself. It was never offered in the removal decision itself. Had he offered it in the removal decision itself, then he would have properly mitigated the penalty, likely would have been accepted, and we wouldn't be in front of you guys today, in front of the court today, I apologize. So therefore, in stating what would happen if it went back down, even if he found that there was sufficient mitigation and there was a removal, the TRP should have been offered in the final decision for removal, not in the notice of proposed removal. Anything further? Thank you, Mr. Silverfield. We'll take the case under advisement.